## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON M. HIMMEL,          **:**
      **Petitioner**        **:**
                                **:**       **No. 1:18-cv-00784**
      **v.**                  **:**
                                **:**       **(Judge Rambo)**
SCI DALLAS, <u>et</u> <u>al.</u>,       **:**
      **Respondents**    **:**

## <u>MEMORANDUM</u>

On April 11, 2018, <u>pro</u> <u>se</u> Petitioner Jason M. Himmel ("Petitioner"), an inmate formerly confined at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"),[1] filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On May 1, 2018, the Court issued an Order directing Respondents to file a response to the petition. (Doc. No. 6.) After granting Respondents an extension of time in which to file a response (Doc. No. 8), Petitioner filed a motion for relief from judgment (Doc. No. 9), maintaining that Respondents' extension motion was being utilized as a "tactical advantage" to defeat the "in-custody" requirements because Petitioner's sentence was to expire on August 21, 2018.[2] Respondents subsequently filed a response to the petition on July 19, 2018. (Doc. No. 10.) On August 9, 2018, Petitioner filed a traverse.

---

[1] A telephonic inquiry with SCI-Dallas from this Court revealed that Petitioner was released from custody on August 21, 2018.

[2] This motion will be deemed withdrawn for Petitioner's failure to file a brief in support. <u>See</u> Local Rule 7.5

(Doc. No. 23.)  This matter is ripe for disposition.  For the reasons that follow, the petition will be denied.

## I.     STATEMENT OF THE CASE

### A.     Procedural History

On October 2, 2014, Petitioner was charged by criminal information with two counts related to failure to comply with the sexual offender registration requirements.  (Doc. No. 10, Ex. 1.)  Petitioner entered a plea of guilty to Count 2, Failure to Comply with Registration Requirements, 18 Pa.C.S. § 4915.1(a)(1), on October 9, 2014.  (Id., Ex. 2.)  During the plea hearing, in addition to submitting to a colloquy by counsel and Judge Chelak of the Court of Common Pleas of Pike County, Petitioner also signed and initialed a written guilty plea colloquy.  (Id., Exs. 3 and 4.)

On December 16, 2014, Petitioner filed a motion to withdraw his guilty plea, asserting that he was innocent of the charge (id., Ex. 5), which was granted on February 11, 2015 (id., Ex. 6).  Petitioner subsequently entered a guilty plea to the same charge on October 29, 2015.  (Id., Ex. 7.)  Petitioner signed and initialed the guilty plea colloquy and submitted to a colloquy of the plea agreement on the record.  (Id., Ex. 9.)  Petitioner acknowledged that he was required to register as a sexual offender, and that he failed to register with the Pennsylvania State Police when he changed his address.  (Id.)  When asked if his counsel had reviewed with

him the elements of the crime, Petitioner responded "Yes." (Id.) Petitioner was sentenced the same day. (Id., Ex. 7.)

On January 5, 2016, Petitioner filed for collateral relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. § 9541 et seq. ("PCRA"), alleging ineffective assistance of counsel and an induced guilty plea. (Doc. No. 10, Ex. 10.) Petitioner was appointed PCRA counsel (id., Ex. 11), who filed a motion to withdraw and a no-merit letter on July 28, 2016 (id., Ex. 12). Petitioner's PCRA petition was dismissed on November 29, 2016 because the court found that Petitioner had entered his guilty plea knowingly, voluntarily, and with full understanding of the consequences of his actions. (Id., Ex. 14.) The Pennsylvania Superior Court affirmed the PCRA court on November 17, 2017. (Id., Ex. 19.) Petitioner did not petition for allowance of appeal to the Pennsylvania Supreme Court and accordingly, his judgment of sentence became final on December 18, 2017. Petitioner filed the instant petition for writ of habeas corpus on April 11, 2018. (Doc. No. 1.)

## B. Habeas Claims Presented

The Court construes Petitioner's habeas corpus petition as raising the following claims:

> 1. Whether Petitioner was provided with ineffective assistance of counsel during the entry of his guilty plea; and

2. Whether Petitioner's trial counsel provided ineffective assistance for failing to challenge the constitutionality of 18 Pa.C.S. § 4915.1(a)(1).

(Doc. No. 1.)

## II.    STANDARD OF REVIEW

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## III.   DISCUSSION

It is first necessary to determine whether Petitioner's claims presented in his habeas petition are cognizable in a federal habeas proceeding and whether they have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

**A.    Exhaustion and Procedural Defaulted Claim, Ground Two**

The provisions of the federal habeas corpus statute at 28 U.S.C.§ 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351(1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if

he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."  See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750; Caswell v. Ryan, 953 F.2d 853, 857, 861-62 (3d Cir. 1992).  To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. Coleman, 501 U.S. at 750.  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the

petitioner's efforts to comply with the state's procedural rule.  Murray v.

Carrier, 477 U.S. 478, 488 (1986).  Once "cause" has been successfully

demonstrated, a petitioner must then prove "prejudice."  "Prejudice" must be

something that "worked to [petitioner's] actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions."  Id. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner

establishes that failure to review the claim will result in a fundamental miscarriage

of justice.  See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Petitioner claims that his trial counsel was ineffective for failing to challenge

the constitutionality of 18 Pa.C.S § 4915.1(a)(1)'s requirement that he register a

new address because he is a sex offender.  (Doc. No. 1 at 7.)  Specifically,

Petitioner argues that the Pennsylvania Supreme Court in Commonwealth v.

Derhammer, 173 A.3d 723 (Pa. 2017), published on November 22, 2017, ruled that

Megan's Law III was unconstitutional.  (Doc. No. 1 at 7.)  In Derhammer, the

Pennsylvania Supreme Court found that the Commonwealth lacked the authority to

prosecute the defendant under Megan's Law III because Megan's Law III was

found unconstitutional.  Derhammer, 173 A.3d at 731.

"Megan's Law has gone through four iterations since its 1995 enactment."

Banks v. Clark, Civ. No. 18-90, 2018 WL 2172811, at *2 (E.D. Pa. Jan 31, 2018).

In December 2013, the Pennsylvania Supreme Court struck down Megan's Law III

for violating the state constitution's single subject rule.  See Commonwealth v.

Neiman, 84 A.3d 603, 616 (Pa. 2013).  Megan's Law III was replaced by the Sex

Offender Registration and Notification Act ("SORNA"), which applied

retroactively to any sex offender who had not completed his sentence or

registration period as of December 20, 2012.  See 42 Pa.C.S. § 9799.13;

Commonwealth v. Muniz, 164 A.3d 1189, 1103 n.3 (Pa. 2017).  Petitioner was

sentenced in October 2014.  (Doc. No. 10, Ex. 7.)

As noted above, the Derhammer decision was published on November 22,

2017, after Petitioner had filed, and the Pennsylvania Superior Court had ruled on,

his PCRA appeal.  Although Petitioner's PCRA petition was dismissed prior to the

Derhammer decision, he did not file a second PCRA petition.  PCRA petitions

must be filed within one year of a defendant's final judgment date, unless the claim

is based on one of three statutory exceptions: governmental interference, newly

discovered facts, or a newly recognized constitutional right.  See 42 Pa.C.S. §

9545(b)(1).  If an exception applies, the petitioner must file within 60 days of the

date the claim could have been presented.  Id. § 9545(b)(2).  The Supreme Court of

Pennsylvania has held that the PCRA's timeliness requirements are mandatory and

jurisdictional in nature; thus, no court may properly disregard or alter them in order

to reach the merits of the claims raised in a PCRA petition that is filed in an

untimely manner.  See, e.g., Commonwealth v. Murray, 753 A.2d 201, 202-03 (Pa. 2000).

Here, Petitioner maintains that Derhammer represents a constitutional change.  Accordingly, Petitioner had sixty (60) days from the Derhammer decision in which to file for post-conviction relief.  See id.  Because Derhammer was decided nearly a year ago, the state courts would now be barred from considering Petitioner's Derhammer claim.  Therefore, Petitioner has procedurally defaulted this claim.  See Coleman, 401 U.S. at 731-32, 735 n.1 (claim is procedurally defaulted if a petitioner failed to exhaust state remedies and state court would now refuse to review the claim based on an adequate and independent state procedural rule).  These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review.  See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).  Petitioner fails to demonstrate any legitimate cause for the default or fundamental miscarriage of justice from failure to review this claim.  See Coleman, 501 U.S. at 750; Banks, 2018 WL 2172811, at *3.  Accordingly, his Derhammer claim will be denied.

Additionally, the Court notes that Petitioner is no longer incarcerated.  In establishing subject matter jurisdiction over a petition for a federal writ of habeas corpus, the threshold question is whether the petitioner is "in custody" pursuant to a state court judgment when the petition was filed.  28 U.S.C. § 2254(a);

Lackawanna Cty. Dist. Attorney v. Coss, 532 U.S. 394, 401 (2001); Maleng v. Cooke, 490 U.S. 488, 492 (1989). Because the purpose of a writ of habeas corpus is to challenge the legal authority under which a petitioner is being held, Preiser v. Rodriguez, 411 U.S. 475, 500 (1973), the statutory language of 28 U.S.C. § 2254(a) requires that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. See Garlotte v. Fordice, 515 U.S. 39 (1995); Maleng, 490 U.S. at 491; Carafas v. LaVallee, 391 U.S. 234, 238 (1968). The remedy for a violation is release. Georgevich v. Strauss, 772 F.2d 1078 (3d Cir. 1985), cert. denied, 475 U.S. 1028 (1986).

If a habeas petitioner is not "in custody" for the conviction and sentence he is challenging as of the date his petition is filed, then the petition must be summarily dismissed for lack of jurisdiction. Diaz v. Pennsylvania, Civ. No. 12-7082, 2013 WL 6085924, at *4 (E.D. Pa. Nov. 19, 2013); United States ex rel. Dessus v. Commonwealth of Pennsylvania, 452 F.2d 557, 559-560 (3d Cir. 1971) ("the sine qua non of federal habeas corpus jurisdiction is that petitioner be 'in custody'"), cert. denied, 409 U.S. 853 (1972). A person who has been released from prison, but remains subject to the restrictions of parole, is considered to be "in custody" for habeas purposes. Jones v. Cunningham, 371 U.S. 236 (1963). Similarly, a person who is released from custody while awaiting trial, either on bail or on "his own recognizance," is considered to be "in custody," because of the

significant restrictions on his freedoms.  Hensley v. Municipal Court, 411 U.S. 345, 351 (1973) (concluding that a person released on bail or on his own recognizance may be "in custody" within the meaning of the statute).

If the statutory "in custody" requirement is satisfied when a habeas case is filed, and consequently jurisdiction has attached in the district court, "it is not defeated by the release of the petitioner prior to completion of proceedings on such application." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (holding that the court's jurisdiction is not extinguished by a petitioner's later release from custody). A habeas case, however, can be rendered moot if the petitioner is released from custody while his petition is still pending if the release effectively provides all of the relief he is seeking.  See Spencer v. Kemna, 523 U.S. 1, 78 (1998); see also United States v. Huff, 703 F.3d 609, 612 (3d Cir. 2013) ("a litigant who is unconditionally released from custody must show that [he] will, in fact, suffer collateral consequences from the supervised release revocation to present a live case or controversy.")

Courts in this Circuit have found that challenges to the registration and notification provisions under Pennsylvania's Megan's Law are not cognizable because such claims do not meet 28 U.S.C. § 2254(a)'s "in custody" requirement. See Robinson v. Smith, No. 17-cv-1023, 2018 WL 3385189, at *13 (E.D. Pa. May 30, 2018).  Courts have also held that any constitutional challenge to the Megan's

Law designation must be brought in the form of a civil rights claim rather than as a claim seeking habeas relief.  Id.; see also King v. Walsh, No. 10-1595, 2014 WL 4639917, at *13-14 (M.D. Pa. Sept. 16, 2014); Cravener v. Cameron, No. 08-1568, 2010 WL 235119 (W.D. Pa. Jan. 15, 2010); Story v. Dauer, No. 08-1682, 2009 WL 416277, at *1 (W.D. Pa. Feb. 18, 2009); Virsnieks v. Smith, 521 F.3d 707 (7th Cir. 2008) (holding that Megan's Law registration requirement did not itself satisfy custody requirement because registration had negligible effects on a petitioner's physical liberty of movement; thus it was insufficient to independently satisfy the custody requirement, even though person was in custody serving sentence for the sex crime that led to registration requirement); Leslie v. Randle, 296 F.3d 518, 521-523 (6th Cir. 2002) (stating that courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas and holding that, despite the fact that the petitioner was incarcerated at the time of his petition, his challenge to the registration portion of his sentence was not cognizable in habeas).

Consequently, Petitioner is not suffering any collateral consequences from the Megan's Law registration requirement, and such registration requirements do not satisfy the "in custody" requirement.  Therefore, this portion of the petition is not cognizable in habeas and will be denied.

**B.     Merits**

Once a court has determined that the exhaustion requirement is met and, therefore, review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  AEDPA places the burden on the petitioner to make this showing.  Williams v. Taylor, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254 have independent meaning.  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court.  Williams, 529 U.S. at 405.  This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"

13

Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir. 2005) (quoting Williams, 529 U.S. at 406). Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts[ ] of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For the purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal citations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76 (quoting Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. Rountree v. Balicki, 640 F.3d 530, 537 (3d

Cir. 2011) (citing Rice v. Collins, 546 U.S. 333, 338-39 (2006) ("State-court

factual findings, moreover, are presumed correct; the petitioner has the burden of

rebutting the presumption by 'clear and convincing evidence.'")); see also

Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard,

a district court is bound to presume that the state court's factual findings are

correct, with the burden on the petitioner to rebut those findings by clear and

convincing evidence."). Further, as with § 2254(d)(1), the evidence against which

a federal court measures the reasonableness of the state court's factual findings is

the record evidence at the time of the state court's adjudication. Rountree, 640 F.3d

at 538.

   "If this standard is difficult to meet, that is because it was meant to

be." Harrington v. Richter, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists

could disagree that the state court's decision conflicts with [Supreme Court]

precedents. It goes no farther." Id. Further, it was designed to be difficult "to

ensure that state-court judgments are accorded the finality and respect necessary to

preserve the integrity of legal proceedings within our system of federalism."

Martinez, 566 U.S. at 9.

   Finally, AEDPA scrutiny is applicable only if the state court adjudicated the

petitioner's claims "on the merits." 28 U.S.C. § 2254(d); see Appel v. Horn, 250

15

F.3d 203, 210 (3d Cir. 2001). "An 'adjudication on the merits' has a well settled

meaning: a decision finally resolving the parties' claims, with res judicata effect,

that is based on the substance of the claim advanced, rather than on a procedural,

or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on

other grounds, Rompilla v. Beard, 545 U.S. 374 (2005) (quoting Sellan v.

Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Further, an "adjudication on the

merits" can occur at any level of state court. Thomas v. Horn, 570 F.3d 105, 115

(3d Cir. 2009). However, "to qualify as an 'adjudication on the merits,' the state

court decision must finally resolve the claim. This means that the state court's

resolution of the claim must have preclusive effect." Id. (citing Rompilla, 355 F.3d

at 247 (quoting Sellan, 261 F.3d at 311)). Where a state court has not reached the

merits of a claim thereafter presented to a federal habeas court, the deferential

AEDPA standards do not apply, and the federal court must exercise de novo

review over pure legal questions and mixed questions of law and fact. Simmons,

581 F.3d at 165 (citing Appel, 250 F.3d at 210). However, the state court's factual

determinations are still presumed to be correct, rebuttable upon a showing of clear

and convincing evidence. Id.

Petitioner's exhausted ineffective assistance of counsel claim is that his plea

counsel rendered ineffective assistance during the guilty plea. (Doc. No. 1 at 5.)

To establish ineffective assistance of counsel, the Supreme Court in Strickland v.

16

Washington, 466 U.S. 668 (1984), explained that a petitioner must show that counsel's performance was deficient. Id. at 688. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390 - 91 (2000). Second, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Because the Strickland standard is a clearly established federal law, Taylor v. Horn, 504 F.3d 416, 430 (3d Cir. 2007), the question for a habeas court is whether the state court's review of a petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of, the Strickland standard, Siehl v. Grace, 561 F.3d 189, 196 (3d Cir. 2009).

Moreover, the Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir.1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on

either prong, his claim fails.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.

2000) ("Because both parts of the test must be satisfied in order to show a violation

of the Sixth Amendment, the court need not address the performance prong if the

defendant cannot meet the prejudice prong, or vice versa.") (citation

omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may

address the performance and prejudice components in any order, but need not

address both if Mr. Foster fails to make a sufficient showing of one.").

 Where a criminal defendant enters a guilty plea upon the advice of counsel,

the voluntariness of that plea can depend on whether "counsel's advice 'was within

the range of competence demanded of attorneys in criminal cases.'"  Hill v.

Lockhart, 474 U.S. 52, 56 (1985).  The Strickland test is to be applied to

challenges to guilty pleas based on ineffective assistance of counsel.  Id. at 57.

However, in the context of a challenge to a guilty plea, to satisfy the Strickland

prejudice requirement, a petitioner "must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial."  Hill, 474 U.S. at 59.

 The Pennsylvania Superior Court addressed Petitioner's ineffective

assistance claim on the merits in his PCRA appeal.  (Doc. No. 10, Ex. 19.)  The

Superior Court provided that while Petitioner claims that his counsel was

ineffective for failing to review the elements of the crime with him,

18

> The record belies this assertion. Indeed, [Petitioner] signed a twelve-page, 54-question written plea colloquy. [Petitioner] also submitted to a lengthy colloquy before the court at the guilty plea and sentencing hearing. During the hearing, [Petitioner] specifically answered "Yes" when asked if counsel had reviewed the elements of the crime with him. [Petitioner] acknowledged he was required to register as a sexual offender, and that he failed to register with the Pennsylvania State Police when he changed his address.

Commonwealth v. Himmel, 3804 EDA 2016 (Pa. Super. Ct. Nov. 17, 2017).

Moreover, the guilty plea colloquy itself included the offense, elements, and factual basis of the offense which was signed by Petitioner. (Doc. No. 10, Ex. 8.) Additionally, it is apparent from the transcript that the oral colloquy addressed, among other topics, Petitioner's understanding of the written guilty plea colloquy, his understanding of the terms of the plea agreement, the absence of coercion, his wavier of rights, his understanding of the charges against him, and his satisfaction with his plea counsel. (Id., Ex. 9.) The record shows that Petitioner's plea of guilty to the offense was made with full knowledge and understanding of the nature of the offense and the full range of potential punishments the court could impose. The record further shows that he was not induced to enter the plea and that he freely entered into the same. (Id.)

The record in this case afforded an ample basis for the state court's conclusion that Petitioner's plea was knowing and voluntary, and not the product of ineffective assistance of counsel, and does not reflect an unreasonable

application of the <u>Strickland</u> test.  Therefore, Petitioner's ineffective assistance of plea counsel claim is without merit and will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable.  As such, no COA will issue.

## V.  CONCLUSION

For the foregoing reasons, Petitioner's motion for relief from judgment (Doc. No. 9), will be deemed withdrawn, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), will be denied and a COA will not issue.  An appropriate Order follows.

Dated: November 19, 2018         s/Sylvia Rambo
                                     SYLVIA H. RAMBO
                                     United States District Judge